UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DONTAI CABRERA,                                :

                Plaintiff,          :

        -against-                    :          **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA,          :          15-CV-5915 (JSR) (KNF)

           Defendant.          :
-------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Before the Court is a motion by Dontai Cabrera ("Cabrera"), made pursuant to 28 U.S.C.

§ 2255, to vacate, set aside or correct his sentence of 240 months imprisonment, five years of

supervised release and a mandatory $200 special assessment, following his guilty plea to: (a)

conspiring to distribute and possess with intent to distribute at least 50 grams and more of

cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846; and (b) discharging a

firearm during and in relation to the conspiracy offense, in violation of 18 U.S.C. §§

924(c)(1)(A)(iii) and 924(c)(2).  Cabrera contends that: (1) his trial and appellate counsel

rendered ineffective assistance to him by failing to argue that he was sentenced under the wrong

sentencing guidelines and that he should have been sentenced under the Fair Sentencing Act of

2010 ("FSA"), which would have placed him "within the FSA's statutory change to the

mandatory minimum"; (2) his guilty plea was involuntary because it was induced by trial

counsel's ineffective assistance, namely his failure to investigate "the circumstances underlying

the plea as well as the facts and law underlying [his] case" and to review the details of the plea

1

agreement with him, including to inform him of the consequences of waiving his rights to appeal

the sentence and to seek a sentence reduction; (3) the trial court failed to consider properly

mitigating factors; and (4) his due process and fair trial rights were violated when the

prosecution failed to inform him and the court about the changes in the law and that the incorrect

sentencing guidelines were applied at his sentencing proceeding.  The defendant opposes the

petition.

## BACKGROUND

### February 11, 2010 Indictment and Subsequent Proceedings

On February 11, 2010, Cabrera was charged by an indictment with two counts: (1)

conspiracy to distribute and possess with the intent to distribute a controlled substance involving

50 grams and more of mixtures and substances containing a detectable amount of cocaine base,

in a form commonly known as "crack," in violation of 21 U.S.C. §§ 812, 841(a)(1),

841(b)(1)(A) and 846; and (2) during and in relation to the narcotics conspiracy in count one of

the indictment, possessing, using and carrying firearms and, in furtherance of such crime, to wit

handguns, discharging those firearms, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924

(c)(2).  The indictment charged an overt act under count one as follows:

> In furtherance of the conspiracy, and to effect the illegal object thereof, the
> following overt act, among others, was committed in the Southern District of New
> York: a. On or about May 7, 2004, DONTAI CABRERA a/k/a "Dante Cabrera,"
> the defendant, and a co-conspirator not named as a defendant herein, sold a quantity
> of "crack" cocaine to two customers in the vicinity of 3551 DeKalb Avenue, in the
> Bronx, New York.

Following Cabrera's arrest, in July 2010, Curtis J. Farber, Esq. ("Farber") was appointed to

represent him, pursuant to the Criminal Justice Act.  On September 8, 2010, your Honor set the

trial for December 13, 2010.  On November 21, 2010, Farber made a motion in limine to

preclude the government from introducing evidence of Cabrera's "past arrests/criminal conduct"

at trial.  On November 24, 2010, William T. Martin, Esq. ("Martin") filed a notice of appearance

on Cabrera's behalf.  On November 30, 2010, the court relieved Farber and substituted Martin in

his stead as Cabrera's counsel.

### December 10, 2010 Plea Agreement

Cabrera signed a plea agreement on December 10, 2010, stating, in pertinent part:

Count one charges the defendant with conspiracy to distribute and possess with
intent to distribute fifty grams and more of mixtures and substances containing a
detectable amount of cocaine base (commonly known as "crack"), in violation of
Title 21, United States Code, Section 846.  This charge carries a maximum sentence
of life imprisonment; a mandatory minimum sentence of 10 years of imprisonment;
a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(A)
and Title 18, United States Code, Section 3571, of the greatest of $4,000,000 or
twice the gross pecuniary gain derived from the offense; a maximum term of
supervised release of life; a mandatory minimum term of five years of supervised
release; and a mandatory $100 special assessment.

Cabrera's plea agreement includes the following stipulation by the parties: "Pursuant to U.S.S.G.

[United States Sentencing Commission Guidelines] § 2D1.1(c), because the offense, including

all relevant conduct, involved at least 840 grams, but less than 2.8 kilograms of cocaine base,

commonly referred to as 'crack,' the base offense level is 34."  Based on Cabrera's criminal

history category I and assuming that he demonstrates acceptance of responsibility, the parties

stipulated that the sentencing guidelines range for: (1) count one is "121-151 months'

imprisonment, with a statutory mandatory minimum term of imprisonment, pursuant to Title 21,

United States Code, Section 841(b)(1)(A), of 120 months' imprisonment"; and (2) count two is

"120 months' imprisonment," pursuant to Title 18, United States Code, Section 924(c)(1)(A)(iii),

to run consecutively to any other sentence, making the stipulated guidelines range for both

counts "241-271 months' imprisonment."  The following was also agreed in the plea agreement:

(i) Cabrera "will not file a direct appeal; nor bring a collateral challenge, including but not

limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241;
nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of
any sentence within or below the Stipulated Guidelines Range of 241 to 271 months'
imprisonment"; (ii) "the Government will not appeal any sentence within or above Stipulated
Guidelines Range"; and (iii) "any appeal as to the defendant's sentence that is not foreclosed by
this provision will be limited to that portion of the sentencing calculation that is inconsistent with
(or not addressed by) the above stipulation."

***December 10, 2010 Plea Proceeding***

> At the plea proceeding, the following colloquy ensued, in relevant part:

> THE COURT: You're represented by Mr. Martin.  Are you satisfied with his
> representation of you?
> THE DEFENDNAT: Yes, your Honor.
> THE COURT: Have you had a full opportunity to discuss this matter with him?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And have you told him everything you know about this matter?
> THE DEFENANT: Yes, your Honor.
>                        * * *
> THE COURT: You are charged in Indictment number 10 Criminal 94 with one
> count of conspiracy, that is to say, agreeing with at least one other person to
> distribute 50 grams and more of crack cocaine, and also one count of discharging a
> firearm during and in relationship or in relation to the drug trafficking offense
> charged in count one.  Have you gone over those charges with your lawyer?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And do you understand the charges against you?
> THE DEFENDANT: Yes, your Honor.
>                        * * *
> THE COURT: Mr. Cabrera, you have previously entered a plea of not guilty to
> those charges and we had a trial all set to go forward on Monday and that can still
> occur.  But I understand that you wish to enter a plea to those two charges; is that
> right?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Before I could accept any plea of guilty, I need to make certain,
> among other things, that you understand the rights that you will be giving up if you
> plead guilty.  So I want to go over with you now the rights that you will be giving
> up.  Do you understand that?
> THE DEFENDANT: Yes, your Honor.

Your Honor advised Cabrera about the rights he was giving up by pleading guilty, namely, the right to: (i) a speedy public trial by a jury at which he would be presumed innocent until proven guilty beyond a reasonable doubt; (ii) appointed counsel; (iii) confront witnesses against him; (iv) testify; and (v) appeal his conviction if found guilty.  Cabrera stated he understood that he was giving up those rights.  Thereafter, the following ensued:

> THE COURT: All right.  Now, the maximum punishment that you face if you plead guilty to count one is a maximum sentence of life imprisonment, with a mandatory minimum of 10 years imprisonment, plus a fine of whichever is greatest, either $4 million or twice the amount of money derived from the crime or twice or - - I guess those are the two possible fines - - plus up to lifetime supervised release to follow any imprisonment with a mandatory minimum of five years supervised release, plus a mandatory $100 special assessment, plus forfeiture.  Do you understand these are the maximum punishments you face if you plead guilty to count one, the conspiracy count?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And if you plead guilty to count two, the firearm count, count two carries a mandatory minimum of 10 years in prison which must be served consecutively to the term of count one, plus a maximum sentence of life imprisonment, plus a maximum fine of whichever is greatest, either $250,000 or twice the gross gain from the offense, plus five years supervised release, plus a mandatory $100 special assessment, plus restitution, plus forfeiture.  Do you understand those are the maximum punishments on count two?
> THE DEFENDANT: Yes, your Honor.
>                                  * * *
> THE COURT: Now, actually my determination of the sentence will be a function of my consideration not only of those proceedings we just discussed, but also of all the factors that I must consider under federal law.  And one of those factors are sentencing guidelines, which are certain laws that recommend a range which the Court may sentence you, subject to upward or downward departure in certain circumstances.  Have you gone over the sentencing guidelines with your counsel?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And in that connection I've been furnished with a letter agreement, which we will now mark as court Exhibit one to today's proceeding, and which takes the form of a letter from the government to defense counsel dated December 9th, 2010.  And it appears, Mr. Cabrera, that you signed it earlier today; is that right?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And before you signed it, did you read it?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: Did you discuss it with your counsel?
> THE DEFENDANT: Yes, your Honor.

THE COURT: Did you understand its terms?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you sign it in order to indicate your agreement to its terms.

THE DEFENDANT: Yes, your Honor.

\* \* \*

THE COURT: Mr. Cabrera, other than the government, has anyone else made any kind of promise to you or offered you any inducement to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone threatened or coerced you to get to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Does the government represent that if this case were to go to trial, it could, through competent evidence prove every essential element of each of these two counts beyond a reasonable doubt?

MR. POSCABLO: We do so represent.

\* \* \*

THE COURT: Then, Mr. Cabrera, . . . tell me in your own word what it is that you did that makes you guilty of these two crimes.

THE DEFENDANT: Sell drugs.

THE COURT: What kind of drugs were you selling?

THE DEFENDANT: Crack cocaine.

THE COURT: And was this part of an arrangement with other people?

THE DEFENDANT: Um, yes, your Honor.

THE COURT: What role were you playing?

THE DEFENDANT: I just made sales.

THE COURT: You just made the street sales?

THE DEFENDANT: Yes.

THE COURT: And this involved more than 50 grams of crack?

THE DEFENDANT: Yes, your Honor.

THE COURT: And where did this occur?

THE DEFENDANT: Decalb Avenue in the Bronx.

THE COURT: In the Bronx. So at various times between 2002 and 2010?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And you knew that what you were doing was illegal and wrong; yes?

THE DEFENDANT: Yes, your Honor.

THE COURT: And with respect to count two, were handguns used in connection with that conspiracy?

THE DEFENDANT: Yes, your Honor.

THE COURT: Were you, yourself, using them or did you help others to use them?

THE DEFENDANT: I fired a gun in the air.

THE COURT: All right. And, approximately, when was that?

THE DEFENDANT: 2002 to 2010.

THE COURT: And you were doing that as part of the ongoing arrangements for the sale of drugs?

THE DEFENDANT: Um, yes, your Honor.

THE COURT: Okay.  And you knew, again, that what you were doing was illegal and wrong; yes?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right.  Is there anything else regarding the factual portion of the allocution that the government wishes the Court to inquire about?

MR. POSCABLO: One moment, your Honor?

THE COURT: Yes.

(Government conferring with defense counsel)

MR. POSCABLO: Your Honor - -

MR. MARTIN: With respect to one aspect, I believe my client indicated that he had fired the gun in the air, but he fired the gun actually in connection in furtherance of this conspiracy.

THE COURT: Mr. Cabrera, why were you firing the gun?

THE DEFENDANT: At people.

THE COURT: Yeah, but what was the reason you were firing the gun?

THE DEFENDANT: To further, basically, the conspiracy.

THE COURT: Well, in what respect; what was going on? Pardon?

THE DEFENDANT: Problems.

THE COURT: Problems?

THE DEFENDANT: Altercations.

THE COURT: Problems in the sale, problems with other - -

THE DEFENDANT: In the streets.

THE COURT: What was the problem?

THE DEFENDANT: Yeah, like that, with other dealers.

THE COURT: I see, okay.

MR. POSCABLO: Nothing further from the government as to the factual portion, your Honor.

* * *

THE COURT: . . . Mr. Cabrera, I told you before that this agreement, this letter agreement that you signed is binding between you and the government, even though it's not binding on me.  And one of its provisions that you've signed to is if I sentence you to the stipulated guideline range or less, that you will not appeal or otherwise attack your sentence.  Do you understand that?

THE DEFENDANT: Yes, your Honor.

* * *

THE COURT: . . . So, Mr. Cabrera, in light of everything we've now discussed, how do you plead first to count one, the conspiracy count to distributing 50 grams or more of crack cocaine, guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: And count two, the use of the gun in furtherance of the conspiracy, guilty or not guilty?

THE DEFENDANT: Guilty.

*June 13, 2011 Sentencing Proceeding*

Prior to sentencing, Cabrera's attorney submitted a letter to the court, contending, inter

alia: "Pursuant to [Cabrera's] plea of guilty, he is facing twenty years of incarceration. We have

reviewed the presentence report ["PSR"] prepared by the probation department and submitted for

your review and do not take exception with its findings." Cabrera was sentenced on June 13,

2011. During the sentencing proceeding, the following colloquy ensued, in pertinent part:

> THE COURT: Good afternoon. So we're here for sentence. And let me first find
> out from defense counsel whether the defendant has read and discussed with
> counsel the presentence report ["PSR"].
> MR. MARTIN: Yes, your Honor. And we in fact have the signed acknowledgment
> of that.
> THE DEFENDANT: Can I speak?
> THE COURT: Are there any objections to that report?
> MR. MARTIN: Well, I have no objection to the report, but the defendant indicates
> he wants to speak.
> THE COURT: Well, he only speaks through counsel. I mean I'll give him a chance
> at the end to, of course, speak to issue of sentencing. But on this legal issue, he
> speaks only through counsel. And any objections from the government?
> MR. BLANCHE: No, your Honor.
> THE COURT: All right. So the government - - the Court is in agreement with
> counsel and the probation office that the total offense level is 32, the criminal
> history category is Roman Numeral II, and the guideline range, which is not binding
> on the Court but which the Court must consider is 135 to 168 months on count one,
> followed by 120 months on count two. Now, the Court is of the view that the Court
> should impose the lowest sentence permitted by law. But the lowest sentence
> permitted by law in this case is a total of 240 months; 120 months on count one,
> which has a mandatory 10 year minimum, and 120 months on count two, which is
> [sic] has a 10 year mandatory minimum. That must be served consecutively to
> count one. So I'm happy to hear what anyone has to say. This is one of those cases
> where the Court's hands are largely tied. But I don't see any reason to do what the
> probation office recommended, which was impose 135 months on count one, and
> 20 years is plenty for any defendant, even one who has committed the very serious
> crimes that this defendant has committed. . . .
>                               * * *
> THE COURT: . . . . [T]his is unfortunately a case - - I have received excellent letters
> from numerous people on the defendant's behalf. While under any set of
> circumstances the sentence would be more than 10 years, I certainly, were it not for
> the requirements of law, might have considered a sentence less than 20 years. But
> I am bound by the mandatory minimums. This Court, like most federal judges,
> does not like the mandatory minimums. We have the guidelines which are helpful.

We have the very excellent set of factors set forth in Section 3553(a) of Title 18 which are in this Court's view right on point and require a Court in the ordinary case to balance many factors and come up with a fair and just sentence. . . .

               \* \* \*

THE COURT: Anything the defendant wants to say?

THE DEFENDANT: Yes, your Honor.

THE COURT: Go ahead.

THE DEFENDANT: Stand up?

THE COURT: Yeah, Well, you can be seated if you prefer, whichever you like.

THE DEFENDANT: I just want to apologize to my family, and the Court for everything that has happened. And I just don't understand the couple things, and I was wondering, a lot of all my co-defendants, they got half of the time.

THE COURT: Yeah, because they didn't plead to the gun count.

THE DEFENDANT: But I had no choice, they said 40 years or - -

THE COURT: What you're saying is either one of two things. You're either saying that the government didn't give you the same deal that they gave other people. That's often the case, that the government has to weigh numerous factors, most of which are unknown to the Court. But, no one forced you to plead guilty. You pled guilty because you were guilty. But when you pled guilty, you were advised of the consequences. The consequences are 240 months. Now, I, you know, am not unsympathetic to your situation, but I have no discretion in this matter.

THE DEFENDANT; Yes, sir.

THE COURT: Okay. All right?

THE DEFENDANT: Well, I want to speak, I am just trying to get it together.

THE COURT: Go ahead.

THE DEFENDANT: I didn't have any prior felonies. I went to school college, everything. What I - - even the jury duty. It's not like they picked me up off the street, I was a person on the corner selling crack. This is my past. And it's 20 years for my past life. I understand I did wrong, but I didn't I - - I didn't even go over my PSI [sic]. My lawyer never even showed up to represent me at the PSI [sic] interview. And I never even seen a sentence memorandum, nothing. I'm just going along with the flow.

THE COURT: Yeah, but none of this - - you see, none of this matters, because when you pled guilty, which you chose to do, no one forced you to do that. You could have gone to trial. You chose to plead guilty. And I - - I appreciate that you accepted your responsibility. When you chose to plead guilty, you were advised unequivocally, clearly, that you faced a mandatory minimum of 10 years on count one, and a consecutive 10 years on count two. I'm sorry that's the law, but there - - it had nothing to do with your lawyer, and it had nothing to do with the PSR. The PSR recommends a higher sentence for you. As far as I'm concerned, I'm not following that path. I'm giving you the absolute minimum that the law required. But I don't deny that that's [a] very heavy sentence.

THE DEFENDANT: Is - - is no - - there is no - - no way that it could run concurrent, nothing?

THE COURT: No. Believe me, I wish that were the case. This is the law. This is the law and I'm bound by it as anyone else is. I assure you, if there were any way

possible under the law to run those sentences concurrently, I would consider that. There is none.

THE DEFENDANT: No ways, it's over.

THE COURT: No. And that - - and that - - and to be - - to remind you, you were told that when you pled guilty. This should not come as any surprise to you, because it was conveyed to you orally, in writing, and every which way. All right. So the sentence of the Court is that the defendant is sentenced to 120 months on count one, to be followed by 120 months on count two, the two sentences to run consecutively to one another. He is also sentenced to the minimum supervised release, which is 5 years. . . . Now, before I advise the defendant with respect to appeal, is there anything else that either counsel needs to raise with the Court. Anything from the government?

MR. BLANCHE: No, your Honor.

THE COURT: Anything from defense counsel?

MR. MARTIN: I have nothing, your Honor. I have nothing more to add, but the defendant wants to speak.

THE DEFENDANT: May I say one more thing, your Honor?

THE COURT: Go ahead.

THE DEFENDANT: There is no appeal, anything? There is not like - - there is no appeal issues, nothing?

THE COURT: I don't believe you have any appeal issues, but you can certainly file an appeal. Was there a waiver of appeal in this case?

MR. BLANCHE: Yes, your THE COURT: See, now you made an agreement which you signed, giving up your right to appeal. But let me say this to you. Notwithstanding that agreement, if you can figure out any basis for appeal, then I encourage you to go ahead and file that appeal. But if you are going to do that, you are going to have to do that within 10 days. Do you understand? Do you understand?

THE DEFENDANT: Yes,

THE COURT: And if you can't afford counsel for the appeal, the Court will appoint one for you free of charge. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

MR. MARTIN: In view of some of the dialogue, I ask that the Court appoint appellate counsel to be available within his 10 day time frame.

THE COURT: Well, here's what I think needs to be done. I think you, if he wants you to, you need to file the notice of appeal.

MR. MARTIN: Certainly.

THE COURT: But I will then relieve you after you have filed the notice of appeal.

MR. MARTIN: Certainly.

THE COURT: And he can then apply to me to have appellate counsel appointed. That way we'll make sure that there is no time problems, that he at least has his notice filed.

MR. MARTIN: Certainly.

THE COURT: All right, very good. Thanks very much.

*June 16, 2011 Direct Appeal*

On direct appeal Cabrera argued that his sentence should be vacated because his counsel failed to: (1) "request an adjournment of the trial"; (2) "file any pre-trial motions"; (3) "file proposed voir dire questions or requests to charge and to prepare for trial"; (4) "review the plea agreement with him prior to the plea allocution"; (5) "attend his presentence interview with the Probation Office"; and (6) "file any objection to the presentence report." United States v. Cabrera, 563 Fed. Appx. 861, 862 (2d Cir. 2014). The court stated that "[m]any of Cabrera's arguments miss the point, and cannot avoid the plea waiver, because they focus on pre-plea and post-plea events rather than the plea agreement process," and "[o]nly one of Cabrera's contentions, namely his conclusory allegation that his counsel failed to review the agreement with him prior to executing the plea agreement, tangentially implicates the knowing and voluntary nature of Cabrera's plea decision." Id. The court found that "[a] review of the record belies a conclusion that Cabrera's waiver of appellate rights was a product of counsel's ineffective assistance or that it was otherwise invalid," because, at the plea allocution, Cabrera was asked whether he: (a) "was satisfied with counsel's representation"; (b) "had an opportunity to discuss the plea agreement and charges with his counsel"; (c) "was pleading guilty voluntarily"; and (d) "understood that he was giving up the right to appeal or challenge his sentence," and he answered these questions affirmatively. Id. at 862-63. The court concluded that Cabrera "cannot appeal his sentence because he has failed to offer a meritorious argument that would overcome his plea agreement waiver," and dismissed the appeal, stating: "In so ruling, we specifically refrain from deciding this issue or any other that may be raised in collateral proceedings via 28 U.S.C. § 2255 or otherwise." Id. at 863.

## PLAINTIFF'S CONTENTIONS

Cabrera contends that his collateral attack waiver is not enforceable because he has a meritorious claim that the waiver is the result of ineffective assistance of counsel implicating the validity of his guilty plea. He contends that "counsel is required to consider the present or future applicability of law that directly relates to a client's case and make informed decisions in the client's case after incorporating and interpreting the effects of that new information." Cabrera asserts that he, "under extreme duress and facing a trial date within two days, was only made aware of the plea agreement on the same day that he faced a pretrial conference, at which time, he ultimately entered an unknowing and coerced plea," because his counsel coerced his "plea via threats of a life sentence in the event that [he] proceeded to trial and lost." According to Cabrera, his counsel failed to investigate his case, "raised no issue with the PSR or Count Two," and Cabrera did not receive anything in return from the government except its promise not to prosecute him under any "open charges," of which none existed, unlike his co-defendants who all pleaded guilty to count one in exchange for the government dismissing count two. Cabrera asserts that his counsel was unaware of the factual circumstances of his case and, unprepared for trial, pressured Cabrera into accepting an unfavorable plea. Cabrera asserts:

> Upon sentencing, as the transcript reflects, [he] did express his confusion in regards to the drastic disparity between his sentence and the sentences imposed pursuant to the plea agreements entered into by his codefendants under the same charges. The court alluded to the fact that Mr. Cabrera was suggesting that his plea was improper. Mr. Cabrera was himself alluding to the fact that he believed his plea agreement was unintelligently/unknowingly entered into, but Mr. Cabrera was not able to discern the fact that he could request that his plea be withdrawn based on his plea agreement[] defects and the process underlying the agreement.

Cabrera asserts that his counsel did not challenge either count or seek to have any count dismissed. Cabrera maintains that he was unaware of the consequences of pleading guilty due to his "counsel's failed advice."

12

Cabrera contends that counsel failed to explain to him that "he was waiving the right to seek the application of a future change in law," namely the FSA, which took effect on August 3, 2010. According to Cabrera, had he known that the change to the law under which he was charged would apply to his case, he would not have waived his rights to appeal and to collateral review. Cabrera contends that his counsel failed to inform him that the FSA may apply to his case, or to raise the issue of the FSA's applicability during the plea and sentencing proceedings, which is what a reasonable attorney would have done. Cabrera asserts that, had he been informed properly by his counsel, "he would have had the opportunity to object to the charge under count one and at the very least he would have had lodged that objection at sentencing for potential review on appeal or upon collateral review." Cabrera contends that his counsel provided ineffective assistance when he failed to argue that the sentence was calculated improperly "based on the statutory change of law that applied to his case pursuant to the FSA of 2010 as well as under the guidelines as amended November 1, 2010." Cabrera asserts that he should have obtained a 5-year statutory minimum sentence under the November 2010 guidelines, instead of a 10-year statutory minimum sentence, and the court violated his rights by applying the incorrect sentencing guidelines at sentencing.

Cabrera contends his appellate counsel rendered ineffective assistance to him when he failed to: (a) argue that the FSA applied in his case at the time of sentencing, placing him "within the FSA's statutory change to the mandatory minimum;" and (b) attack the appellate and collateral review waivers in his plea agreement based on the circumstances of the plea. According to Cabrera, he "was specifically found guilty of an offense involving 50 grams of cocaine base," and that quantity is no longer sufficient to trigger the statutory minimum sentence of 10 years that the court applied. Moreover, the court "determined that his base offense level

was 34, as opposed to 30, which is where it would have fallen under the amended guidelines."

Cabrera contends:

> When combined with a criminal history category of II, Mr. Cabrera's recommended guideline sentencing range, after application of acceptance of responsibility, should have been based on an offense level 28, or recommended guidelines range of 87-108 months after application of the relevant reduction for acceptance of responsibility, instead of the 135-168 month sentencing range actually applied by the District Court at his sentencing hearing. Mr. Cabrera was sentenced to 120 months incarceration under Count One of the indictment, reflecting the statutory mandatory minimum for crack cocaine offense involving 50 grams or more of crack cocaine, which has been subsequently and retroactively reduced. Since the mandatory minimum sentence of 120 months is no longer applicable to Mr. Cabrera, he submits that his sentence should be vacated and this matter remanded to the District Court for a new sentencing hearing. Additionally, Mr. Cabrera would submit that his total offense at that resentencing hearing should be no more than 28, and, further, under the 2-point reduction as determined by Congress's Amendment 782, effective November 1, 2014, his total offense level should actually be 26, and his recommended guideline sentencing range should be no higher than 70-78 months, and the applicable mandatory minimum sentence should be no higher than 60 months.

Cabrera contends that he was denied due process, when he received a sentence which was substantively unreasonable and greater than necessary to achieve the goals of sentencing under 18 U.S.C. § 3553. He maintains that your Honor should have considered several mitigating factors, including: (1) his young age at the time of the offence; (2) "excellent familial and community support"; (3) "childhood background and personal loss"; and (4) his personal growth and post-offense rehabilitation. Moreover, his due process right was violated when the prosecutor failed to inform him: (a) that "he may have been entering his plea based upon incorrect charges and law"; and (b) "of the potential applicability of the FSA to Mr. Cabrera's plea to Count One of the plea agreement."

## DEFENDANT'S CONTENTIONS

The defendant contends that Cabrera's motion is barred because he waived his right to attack his conviction or sentence collaterally when he executed his plea agreement with the

14

government, and the motion should be denied because: (1) the ineffective assistance of counsel claims are meritless; (2) Cabrera's below-guidelines sentence was not procedurally or substantively unreasonable; and (3) the instant "claims are barred by the appellate waiver" in Cabrera's plea agreement. The defendant asserts that Cabrera's trial and appellate counsel did not render ineffective assistance to him when they failed to raise a meritless argument regarding the FSA, which "was, in fact, applied" to his case. According to the defendant,

> [t]he Plea Agreement relied on the November 1, 2010 Guidelines manual, which incorporates the FSA's mandate.   Specifically, Cabrera stipulated in the Plea Agreement to conspiring to distribute at least 840 grams but less than 2.8 kilograms of cocaine base, which was the amount of cocaine base necessary to trigger the enhanced penalty provisions of Section 841(b)(1)(A) after the enactment of the FSA. As a result, Cabrera's complaints about the FSA are meritless, and counsel's failure to raise meritless claims does not constitute ineffective assistance of counsel.

The defendant contends that the record contradicts Cabrera's claim that his plea was not voluntary, knowing and intelligent because his counsel did not review the plea agreement or the facts or law relating to his case. Cabrera told your Honor, under oath, that he was satisfied with his counsel's representation and that he had a full opportunity to discuss the case with his counsel and told his counsel everything he knew about the matter. Cabrera also represented to your Honor that he read, discussed with his counsel and understood the terms of his plea agreement. Moreover, Cabrera argued on appeal that his trial counsel was ineffective for failing to review the plea agreement with him, and that claim was rejected; thus, he cannot relitigate his complaints about his plea agreement.

The defendant contends that Cabrera failed to identify either a procedural or substantive error with his sentence or assert that his below-guidelines sentence is unreasonable. Although Cabrera contends that your Honor should have given more weight to mitigating factors, the sentence imposed was the lowest sentence permitted by law, and the record indicates that your

15

Honor "likely would have sentenced the defendant to a lower sentence based on his individual circumstances but for the mandatory minimums required by law." The defendant maintains that Cabrera's claims are barred by the waiver in his plea agreement, and he "has fallen short of invalidating that waiver through his unavailing ineffective-assistance-of-counsel claims."

## PLAINTIFF'S REPLY

Cabrera contends that the merits of his ineffective assistance of counsel claim were not reached on his appeal and that issue is left properly for collateral review. Cabrera asserts that, "at no point during the plea or sentencing hearings, was any factual basis provided for the drug quantity assessment," which was "arbitrary and unfounded." According to Cabrera, since no factual basis was provided for the arbitrary quantity contained within the plea agreement, he allocuted to 50 grams or more at both the plea and sentencing hearings, and the "court made no assessment of the drug quantity attributed to Mr. Cabrera during the plea and sentencing hearings," the court failed to apply the FSA to his case, which would have resulted in a mandatory minimum of 60 months imprisonment under count one.

Cabrera contends that his sentence was calculated improperly in disregard of the FSA and the November 1, 2010 sentencing guidelines. According to Cabrera, the FSA went into effect on August 3, 2010, replacing "the 100-to-1 crack to powder cocaine sentencing ratio with an 18-to-1 ratio (28 grams will trigger a 5-year mandatory minimum and 280 grams will trigger a ten-year mandatory minimum) under 21 U.S.C. § 841." Cabrera asserts:

> In the instant matter, counsel failed to argue that the Petitioner's sentence was improperly calculated, based upon the statutory change of law that applied to his case pursuant to the FSA of 2010. At both his plea hearing and sentencing, Mr. Cabrera allocuted to only 50 grams or more of crack cocaine. No mention of what quantity the government would be able to prove if Mr. Cabrera went to trial was made and no reference to drug quantity was made outside of his allocution to 50 grams or more. And Mr. Cabrera pled to the statute that required a 10 year mandatory minimum under pre-FSA law. Again, the government made no mention

at Mr. Cabrera's plea hearing in regards to drug quantity side of Mr. Cabrera's statement that he made a street-level deal in 2004, nor did the government or Mr. Cabrera stipulate at his plea hearing or sentencing hearing to any drug quantity outside of the allocution of count one including 50 grams or more of crack cocaine. And, the fact that Mr. Cabrera received a ten-year mandatory minimum rather than a five-year mandatory minimum under Count One, illustrates the fact that the FSA was not applied and, ultimately, the incorrect guidelines were used at sentencing.

Cabrera asserts also that his appellate counsel "was ineffective in failing to argue that Mr. Cabrera should have been sentenced under the FSA" and "should have faced a 5 year Statutory Mandatory Minimum rather than a 10 year minimum." According to Cabrera, based on his plea agreement, he "was specifically found guilty of an offense involving 50 grams of cocaine base. This quantity is no longer sufficient to trigger the statutory mandatory minimum sentence of 10 years that the District Court applied at the sentencing hearing." Thus, the court "applied the pre-FSA statutory mandatory minimum upon sentencing and counsel failed to object."

## LEGAL STANDARD

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

A guilty plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). "[W]aivers of the right to appeal a sentence, like waivers of constitutional rights, are invalid

17

unless they are voluntary and knowing." United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) (citation omitted). Waivers of rights to mount a direct appeal and collateral attack under 28 U.S.C. § 2255 in plea agreements are enforceable and they apply "to grounds that arise after, as well as before, [the defendant] made the waiver[s]." Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001).

"An ineffective assistance of counsel claim survives the guilty plea or the appeal waiver only where the claim concerns 'the advice [the defendant] received from counsel.'" Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (citation omitted). The claim of ineffective assistance of counsel, based on counsel's advice about a defendant's bargaining position, survives the appellate waiver because "it connects the alleged ineffectiveness of [the defendant's] attorney with the voluntary nature of his plea." Id. at 139. "There is no general bar to a waiver of collateral attack rights in a plea agreement." Frederick v. Warden, 308 F.3d 192, 195 (2d Cir. 2002). A criminal defendant is not barred by an appellate or collateral challenge waiver in a plea agreement "to the extent [the defendant] claims a violation of Rule 11 [of the Federal Rules of Criminal Procedure] or the ineffectiveness of . . . counsel in failing to raise such a claim." Id. at 196.

To obtain relief on an ineffective assistance of counsel claim, a habeas corpus petitioner must establish that his counsel's performance was: (1) deficient, such that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984); and (2) prejudicial so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. In assessing counsel's performance, "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, 104 S. Ct. at 2065 (citation omitted).

## APPLICATION OF LEGAL STANDARD

### *Whether Guilty Plea Was Involuntary Based on Ineffective Assistance of Counsel*

Although Cabrera contends that his plea was "unintelligent and involuntary," because his counsel threatened him "with an unrealistic sentence" and failed to investigate the circumstances of his case and inform him about the consequences of the plea agreement's waiver, the record of the guilty plea proceeding demonstrates otherwise. At the plea proceeding, your Honor inquired of Cabrera whether he: (a) was satisfied with his counsel's representation of him; (b) had a full opportunity to discuss "this matter" with his counsel; (c) told everything to his counsel; (d) understood the rights he would be giving up if he pleaded guilty; (e) understood the maximum punishments he faced by pleading guilty; (f) had "gone over the sentencing guidelines" with his counsel; (g) read the plea agreement before he signed it; (h) discussed the plea agreement with his counsel; and (i) understood the terms of his plea agreement, to which Cabrera answered affirmatively, under oath. Moreover, your Honor inquired of Cabrera if anyone: (1) made any promise to him or offered "any inducement" to make him plead guilty; or (2) threatened or coerced him to plead guilty, and Cabrera responded negatively.

Cabrera's plea agreement included a sentence calculation based on the sentencing guidelines in effect at the time of the plea agreement, namely the November 1, 2010 edition of the sentencing guidelines, which incorporated the FSA. At the plea proceeding, Cabrera stated that he understood that he entered into a stipulation about the sentencing guideline range for both charged counts in his plea agreement and he also understood that the mandatory minimum

19

sentence for count one of the indictment was 10 years imprisonment.  Since the plea agreement

and the plea proceeding were based on the November 1, 2010 edition of the sentencing

guidelines, incorporating the FSA, and in light of Cabrera's statements at the plea proceeding,

the Court finds that counsel did not render ineffective assistance to Cabrera in connection with

the plea agreement by failing to: (1) investigate the facts and the law applicable to Cabrera's

case; and (2) review the details of the plea agreement with him.  Accordingly, the Court finds

that Cabrera's guilty plea was voluntary and knowing.

### *Whether Cabrera's Claims Are Barred By the Plea Agreement's Collateral Challenge Waiver*

Cabrera stipulated in his plea agreement that the statutory mandatory minimum sentence

of imprisonment is 120 months for count one of the indictment and 120 months for count two of

the indictment, and that the two sentences must run consecutively to one another.  In his plea

agreement, Cabrera waived his right to "a collateral challenge," pursuant to 28 U.S.C. § 2255, of

"any sentence within or below the Stipulated Guidelines Range of 241 to 271 months'

imprisonment."  Cabrera was sentenced to 240 months imprisonment, consisting of 120 months

imprisonment on count one of the indictment and 120 months of imprisonment on count two of

the indictment, to run consecutively to one another.  Cabrera's plea was voluntary and knowing

and he failed to establish that his counsel rendered ineffective assistance to him in connection

with his plea agreement; therefore, the Court finds that Cabrera's waiver of his right to "a

collateral challenge," pursuant to 28 U.S.C. § 2255, of "any sentence within or below the

Stipulated Guidelines Range of 241 to 271 months' imprisonment," was knowing and voluntary,

and his plea waiver is enforceable.  Cabrera's plea agreement's collateral challenge waiver was

knowing and voluntary; therefore, Cabrera's claims, including his claim that his counsel

rendered ineffective assistance to him at sentencing, are barred by the plea agreement waiver of the right to mount a collateral challenge, pursuant to 28 U.S.C. § 2255.

### RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff's motion be denied.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York             Respectfully submitted,
      May 20, 2016

                                              *Kevin Nathaniel Fox*
                                            KEVIN NATHANIEL FOX
                                            UNITED STATES MAGISTRATE JUDGE